Good morning. May it please the court. My name is Victoria Iger. I represent the defendant appellant Daniel Leveto and I'm reserving three minutes for rebuttal. The Sixth Amendment right of a criminal defendant to counsel at trial occupies an elevated status among the fundamental constitutional rights. The principal issue in this case is whether the defendant was deprived of that fundamental right when the trial court compelled him to represent himself at his trial and to defend the criminal tax charges and conspiracy charges against him without the assistance of an attorney. The court really didn't compel him to represent himself. He made that choice himself. Your Honor, he did elect to represent himself, but he sought to revoke that decision before any trial proceedings had begun. And that was a timely revocation of his right and he was compelled to represent himself pro se when the trial court denied that request and did so without making any inquiry as to why the request was being made or what impact it might have on the trial. Well, it wasn't in advance of trial. It was the first I recall that he changed his mind with during jury selection. It was prior to the jury selection. The case was called for trial that morning. There was some colloquy about legal issues and pending motions. Then there was a sidebar. This was before the jury selection began. And at the sidebar, and this is on page 312 of the appendix, Dr. Levito said, after some of the newer issues had come up, I had additional due process concerns and I am asking to be represented by counsel. The court then said something which was not correct. He said, well, we appointed Mr. Misko counsel a long, long time ago. You have been represented by counsel, but you don't want to take advantage of it. And that's incorrect because Mr. Misko had been appointed as standby counsel. So are you saying standby counsel is not the same as counsel? I am saying that, and I know that the Supreme Court has so held. Standby counsel is not counsel for Sixth Amendment purposes. What's the standard for the withdrawal? I mean, what's a judge to do when someone does withdraw and then on the eve of trial, in trial, says, I want to withdraw my waiver, essentially? The principles are fairly clear, and I think the government and we agree on what they are. A defendant may waive the right to counsel and elect to represent himself, but that decision is not cast in stone. It may be reconsidered and revoked. The right to reassert a previously waived right to counsel is not absolute. A pro se litigant may not abuse his right either by strategically requesting special appearances, which he did not do, or by repeatedly altering his position on counsel to achieve delay or obstruct the orderly administration of justice, which he did not do either. There was standby counsel present in the courtroom. There had to, at the very minimum, there should have been some inquiry at that point to see whether standby counsel could step into the role of counsel. He had been appointed a year earlier. He had all the discovery. He had been present at the suppression hearing. There were no issues between Mr. Misko, the standby lawyer, and Mr. Vito. So you're saying that it appears that Judge Cohill based his ruling on delay, that it's too late. Is that... Well, that's all he said. He said it's too late. So that you're saying there should have been fact-finding as to whether, in fact, it was too late, whether it would cause delay, and we don't have that in the record? Should we... That's correct. It's only arguably too late if it would have caused a delay. Even if it would have caused a minimal delay, there had to have been some inquiry and some balancing. Look, if Mr. Misko had said, Your Honor, I'm ready, there would have been no problem. We would not have been here. If Mr. Misko had said, I need a little time to prepare, then the judge could have considered the effect of that on the administration of justice. So if we were to rule in your favor and send this back, we would send it back for an inquiry as to whether he could withdraw, or we would send it back for a new trial vis-a-vis, I mean, with the right to counsel? We are asking you to send it back for a new trial, because... Because he did follow through on a trial without the necessary... I think I understand. And because even if Mr. Misko had requested some time, the judge could have said, Well, no, Dr. Levito, either represent yourself, or Mr. Misko can represent you, even though he's not fully prepared. Take your choice. All right. Is there anything in the record about Mr. Levito's having been strategic or playing fast and loose with the court? I mean, very often when we read transcripts, we can tell that the judge is telegraphing the fact that this has been a very difficult situation, this person has flip-flopped, et cetera. But is there anything in the record to that effect? No, there's not. Dr. Levito was not a flip-flopper. He was very clear from the beginning what his position was. He wanted to represent himself, but he never expected that the case would go to trial. He always thought it was going to be disposed of on dispositive motions to suppress, and if he lost them, a plea which would permit him to preserve those issues for appellate purposes. He never intended to go to trial. And in fact, when standby counsel was appointed prior to that, he said that, I want standby for now. And in fact, I think looking at the record, Judge Cohill kind of may have inadvertently misled him about his right to change his mind, because when he said, I want counsel, I want to proceed pro se for now, Judge Cohill said, all right. And later in that proceeding, there was a little bit more of a colloquy about standby counsel, and I'd like to get the words, if I may. And Judge Cohill said, I'm going to appoint standby counsel whether he wants to go to trial, and he said, I'm going to That conclusion derives forcefully from the timing of the motion to recuse, which was preceded by the lawsuit, the basis for that motion, which was an event that took place eight months prior, and the statements of Dr. Levito himself when the matter of the judge's denial of his  decision. But isn't it problematic for us when all we have before us is a statement of the trial judge that it's too late? You made the waiver a year and a half ago, and it's too late. This was made without fact-finding. So as much as we might find some basis in the record, we have the reasoning of the court saying it's too late, and yet there's no fact-finding to support that. We don't know whether, in fact, Mishkin could have said, listen, I've watched this thing unfold. I'm ready to go. We just don't know. Isn't that a problem? It's a bit of a problem, but I don't think it's insurmountable, Your Honor. The cases that we've cited on the need for express findings of intent to delay indicate that you don't need such an express finding. If you review the record and find that it contains evidence of an intent to delay or an intent to abuse the right to counsel, that would support the discretionary act by the judge. All right. Well, then give us the evidence that you have. All right. First of all, he waited. In August of 2004, Dr. Levito developed the idea that the trial judge was colluding with counsel on this matter of whether the local rules should have resulted in the dismissal of his indictment. He made reference to this issue a couple of times between August of 2004 and when he eventually did something about it. He waited until the week before trial to file his civil rights lawsuit against Judge Cohill. That's from August of 2004 to May 16th of 2005. He followed the lawsuit six days later with the motion to recuse, which was lodged, not filed, I believe, or not filed until afterward. Merely the timing here strongly suggests that he was waiting until the eve of trial to try to bring things to a halt. Let me bring a few points on the other side of the coin. Yes, Your Honor. He made it very clear that he would plead guilty, open plea of guilty, reserving the right to appeal the suppression ruling. The government didn't accept that. Why, I can't understand. But you decided that you would consent to a conditional plea only if he waived his appellate rights as to sentencing. So wasn't the government responsible too for stretching this thing out? Had you gone along with him as a trial judge? I can't understand why you didn't. But you did prolong the decision until the date of trial. Your Honor, that decision was made by the government, by the United States Attorney, and I don't know what the thinking was. I understand. I'm representing the United States, and I'm accountable for it. It's true that by insisting on more hardball terms than Dr. Levito was willing to accept, the process got stretched out. That is undeniable. But that's a separate issue from whether Dr. Levito was acting in a way on the eve of trial. Well, it isn't really. Because if you are anticipating you're going to have a guilty plea, you don't need to do anything with the fact that you think the judge is biased towards the government. If you're going to resolve it, then you learn the day of trial, this thing is going to go forward with the very judge who you think is not acting in your best interest, you all of a sudden will do some things. So it's not, and I think that's where the findings come into play here. While people could draw an inference to one side with respect to the timing, you could draw an inference with respect to the other, and we're lacking the court's viewpoint as to what was going on here. Yes, Your Honor. Undeniably, that is a problem. And I think that what he said, when Levito said this is more difficult, I mean every time he asked for counsel, it was because he was confronting a real problem with the complexity of what he was saying. So shouldn't a trial judge say, it's too late, or shouldn't a trial judge at least stop and say, you know, I can see what this problem is, let's inquire into this further as compared to saying, you waived it once, you waived it then, too bad, you're on your own. As to the second question, I don't think it was an abusive discretion to say, no, you made up your mind, you knowingly, intelligently, and voluntarily waived the right to counsel, knowing full well the complexity of this case. But isn't that a legal error? A judge saying to someone, you did that, knowingly, intelligently, i.e., you cannot withdraw it. Almost acting as if, as a matter of law, there is no ability of a person to withdraw a knowingly made waiver. I don't think this record suggests at all that the judge entertained such an idea. Let me quickly get back to the first question, which was, what do we do, what does this court do with a record that's rather open-ended on this issue? And we submit that if you want findings from the district court to resolve the ambiguity to a certainty, the appropriate thing to do is a limited remand, not vacating the conviction in a new trial. And I'll have some authority to the court on a Rule 28J letter as soon as possible, certainly not later than Monday out of my office. There was a recent Fifth Circuit case on this very issue that sanctions the idea of limited remand for the district court to make factual findings. Do we remand it to the same district court judge? Yes, I think so. Arguably, we would have to, because he's the one who deserves it. On the other hand, therein lies the problem. So that's an option for the court. We still feel that the record is strong enough on the abuse of the right to counsel and the right to pro se representation that it's not necessary. But I certainly understand if this court doesn't want to speculate. It's a difficult case because of the speculation. Yes, yes. I also want to remark quickly on the role of principle that we agree with. Standby counsel is not interchangeable with counsel of record who's going to provide the full panoply of representation. And Judge Wise, you asked the right questions and stole my thunder. The record here indicates that Dr. Levito, in essence, agreed with Judge Cohill that substituting Mr. Misko on the spot was impracticable. The colloquy between Judge Cohill and Dr. Levito is most reasonably and naturally interpreted as an admission by Dr. Levito that changing horses at this point would have required a continuance. Moreover, Mr. Misko was sitting right there and I assume in hearing of the judge who said, we don't operate that way. I couldn't put Mr. Misko or anybody else in at this point to represent you. And it was that statement to which Dr. Levito gave his assent. So we don't view the possibility of substituting Mr. Misko as realistic at all on this record. If there are no other questions with regard to the Sixth Amendment issue, ma'am. Let me ask you about that colloquy, to which Levito replied, I'm aware of that, Your Honor. That is why before it started, I reasserted the right and I filed the action against you a week ago before trial. Did he reassert the right before trial? Was jury selection well in advance? He reasserted the right, I think quite literally, as jury selection was about to take place. It was certainly before opening statements and before any evidence had been put on. But it was the morning of trial with the denier filing in and he wanted a sidebar. And this was immediately after the denial of his motion for recusal. And it was right after he said, I'm not going to participate in a mock trial. Turning to the warrant, the warrant is very general. The affidavit is not. The affidavit was not incorporated in the warrant. It seems to me I'd like you to address the general nature of the warrant, number one. And number two, whether in order to save the warrant we would need to have findings with respect to how broad the search actually was. Yes, Your Honor. I want to say at the outset that the arguments made by the appellant in this case are very similar to arguments under nearly identical conditions that the Third Circuit has rejected recently. And that was in United States v. $92,422. That was, again, then-Circuit Judge Alito writing for the majority. We view U.S. v. $92,000 as central to the disposition of the warrant issue. And a close second behind that case would be Grudy v. Doe. Just as in the instant case, the warrants at issue in $92,000 used very broad, inclusive language in the list of items to be seized. Just as in the instant case, the indictment contained no limiting dates. Perhaps even more egregiously in the $92,000 case, there was no apparent limitation as to the transactions, activities, or crimes involved. So you would say that the breadth of the crime required the breadth of the warrant. Yes, Your Honor. Just as in the $92,000 case, what we had here was a very complicated, wide-ranging, lengthy financial fraud scheme being investigated. The nature of the investigation and the nature... And also it's important to note that in the $92,000 case, just as in the instant case, the detailed warrant to which the majority looked was not incorporated into the warrant. So you have the incorporation issue in each case. When you account for an indirect method of proof, and that's what the IRS says it was embarking on, I think it would have been roughly 89 to the date of the indictment. They would have been acquiring records that would have covered the period 88 or 89 to... I'm sorry, not the date of the indictment, the date of the search warrant, 96. So it was lengthy. It involved sham offshore trusts, foreign bank secrecy, sham transactions onshore, conspiracy, and the need for a broad warrant was just as compelling in the instant case as in U.S. v. $92,000. Even with all of those flaws that afflicted the warrant in the $92,000 case, the majority found that the problem was overbreadth, not general warrants, and that the agents were entitled to rely on the legality of the warrant because it had been signed by a magistrate. Here we have arguably less of an overbreadth problem, but regardless, this court should apply U.S. v. $92,000 to determine that the agents in this case acted in good faith because the warrants were overbroad, not general. If they were overbroad and not general, first of all, the good faith exception saves the search, but second, and almost as importantly, you can apply Grutti v. Doe to consider the unincorporated affidavit to limit the warrant. It's appropriate in this case because the affidavit was much stricter and more detailed than the warrant, and it's clear from the record that the agents restricted themselves to the terms of the affidavit. It is clear? Yes. Where is that clear from the record? I don't think there's any dispute. I mean, greeting cards were taken. That's true, and greeting cards could establish the conspiratorial relationship that was being alleged. May I continue, Your Honor? Yes. It is untrue to say that the terms of these warrants allowed the seizure of everything in the House and in the office. That is just flatly untrue. If you look carefully at the list of items to be seized, it's undeniable that they relate to a financial investigation, and this was not a rummaging three-wheeled pell-mell through somebody's papers and effects. I'm out of time, Your Honor. All right. So you would say that more than financial records were capable of being seized because of the conspiracy allegations? Yes, and also apparently legitimate financial records, legitimate in the sense that they wouldn't automatically be linked to a crime, were appropriate because of the indirect method that the IRS was going to use, where if you don't establish as a threshold matter before you reach Rule 29 time that you conducted a sufficiently thorough investigation to purify out non-income items, you lose your case. Thank you very much. Thank you. Is Iger on rebuttal? On the Fourth Amendment issue, I think it's only correct to say that the seizure was limited to the scope of the warrant because the warrant permitted the seizure of everything. Well, the issue is whether it was limited to the scope of the affidavit. Well, I'm not sure that that's the issue because the affidavit was not incorporated and it was not even available at the search site and it was not referred to. And as Your Honor noted, greeting cards were seized, Dr. Levito's personal library was seized, and I don't think those are within the scope of the affidavit. But I'm not sure that that's the dispositive issue on the suppression motion. Well, Grody left that open. Grody left that open and I think we and the government read that case somewhat differently. With regard to $92,000 of currency, we deal with that case in our reply memorandum of law, pages 20 to 21, and we also, I think, read that case differently. And we note that it quotes Christine, which is a general warrant case and that's what we think this is. With respect to the state of the record on the waiver of counsel, I think the government is grasping at straws when it refers, and I think it's somewhat misleading, when it refers to the colloquy that occurred after the government had rested its case and tries to read that as a concession by Dr. Levito that he was after delay. It's really no such thing. They were talking about two different things. Dr. Levito was saying, I'm not requesting counsel now after the government has presented its case. No, you can't do it. That's why I requested counsel before the trial had started. All right, so that colloquy that was referred to happened after the government had rested at 339. Yes, Your Honor. Had he not requested a continuance just at the beginning of the trial? Dr. Levito did not request a continuance at the beginning of the trial.  Even when he made the motion for recusal, the motion was, I want to go to trial before a fair judge, not that I don't want to go to trial. Dr. Levito was incarcerated pre-trial. He had no interest in dragging this on. In fact, one of the things he was complaining about when the court had extended the time for the government to answer the motions was that it was delaying the case. The delays in this case, none of them are attributable to Dr. Levito except perhaps in the very beginning when he was given some additional time to make his pre-trial motions. All of the other delays cannot be put at his feet. Nobody wanted this case to go to trial, and Judge Cohill didn't want to try it. After the plea negotiations fell apart, Dr. Levito made another motion for release from detention and then took an appeal to this court, and for a little while the file was up in the Third Circuit. Judge Cohill says, I'm taking this case off the calendar indefinitely, and even when the file was returned, didn't put it on the calendar for months. I don't think that the delay can be laid at Dr. Levito's feet, nor do I think that the appropriate remedy is a remand for fact-finding at this point in time. I'll go back to a point which I don't think I quite finished earlier, which is that if Mr. Misko had said, I'm not quite prepared, I need a little bit more time, then there could have been some consideration of that. If Judge Cohill was not prepared to grant any more time, then Dr. Levito would have been given the choice of pro se or with Mr. Misko. And as complicated as the case might have been, Mr. Misko, who was in fact a trial attorney, familiar with the case, could have done a much better job than Dr. Levito, who was very respectful throughout, he was not obstructive, he tried to follow all of the rules of the court, rules of evidence, but he wasn't up to it, and the record shows that. Thank you. Thank you. The case is very well argued. We'll take it under advisement. Thank you.